MANUEL R. CABRAL and IRENE M. CABRAL, husband and wife, Plaintiffs-Appellants, *v.* McBRYDE SUGAR CO., LTD., a Hawaii corporation, Defendant-Appellee

NO. 8129

(CIVIL NO. 1962)

JUNE 25, 1982

BURNS, C.J., HEEN, J., AND CIRCUIT JUDGE TSUKIYAMA
ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY BURNS, C.J.

The Cabrals sued McBryde, alleging that their property was damaged by the overflow of McBryde's negligently maintained irrigation flume. The jury found the Cabrals more negligent than McBryde, and judgment was filed in favor of McBryde.

On appeal the Cabrals raise two issues:

I. McBryde is strictly liable for damages suffered by the Cabrals' property.

II. The lower court reversibly erred in denying the Cabrals' Motion for Judgment Notwithstanding the Special Verdict to Enter Judgment as Supported by Affidavits Herein or for a New Trial.

We affirm the lower court's judgment.

Before the case was submitted to the jury, the Cabrals moved for a directed verdict on the issue of liability on the grounds that their evidence of McBryde's negligence "stands uncontroverted and unrefuted." Their motion was denied.

The special verdict form was given to the jury by agreement. The first time the jury answered it, the answers to questions 4 and 5 were inconsistent. The trial judge sent the jury back into session and, after further deliberations, the jury changed its answer to question 4 from "no" to "yes," thereby removing the inconsistency. At that point the special verdict form read as follows:

SPECIAL VERDICT

\*　\*　\*　\*　\*

1. Was McBRYDE SUGAR CO., LTD. negligent?
ANSWER:　Yes
(YES or NO)

2. If you found McBRYDE SUGAR CO., LTD. negligent, was its negligence the proximate cause of the occurrence?
ANSWER:　Yes
(YES or NO)

(If your answers to Questions Nos. 1 and 2 were "NO", do not answer the remaining questions; just date and sign the verdict form and notify the bailiff.)

3. Was the Plaintiff negligent?

ANSWER:     Yes
                 ―――――――――
                 (YES or NO)

4. If you found the Plaintiff negligent, was his negligence a proximate cause of the occurrence?

ANSWER:     Yes
                 ―――――――――
                 (YES or NO)

5. Of the parties whose negligence you found to be a proximate cause of the occurrence, what percentage of responsibility for the occurrence do you assign to each party?

DEFENDANT:     45%
PLAINTIFF:     55%
               ―――――
TOTAL:     100%

6. State the amount of·damages sustained by the Plaintiff in the April 19, 1976, occurrence:

$24,750.00

DATED:   Lihue, Hawaii, Sept. 17, 1980.

\*     \*     \*     \*     \*

After the special verdict was read in open court, the Cabrals' counsel polled each juror and all agreed that it was their verdict.

In due course the Cabrals filed a Motion for Judgment Notwithstanding the Special Verdict to Enter Judgment as Supported by Affidavits Herein or for a New Trial under Rules 50 and 59, Hawaii Rules of Civil Procedure (HRCP), on the following grounds:

1. The Special Verdict was irreconcilably inconsistent with the general intent of the Juror's [sic] as evidenced by the attached affidavits.

2. The Special Verdict form did confuse the jury and any answers thereto were inconsistent and different from what [sic] their· true intent and verdict.

Attached to the motion were identical affidavits from eleven of the twelve jurors.[1] [2] Each affidavit states, *inter alia:*

―――――――――

[1] Plaintiffs' counsel could not locate the last juror. However, the jury's verdict only required ten out of twelve votes. HRS § 635-20 (1976).

[2] Concerning the propriety of the interrogation of jury members after the jury's verdict, we cite the admonition contained in *In Re Bouslog-Sawyer,* 41 Haw. 403 (1956).

3. That the special verdict form given to us was confusing and misleading and any interpretation of our answer to the special verdict against the plaintiffs is wrong and is against the unanimous agreement and intent of the Jurors.

4. That the trial Jurors had unanimously agreed on their verdict in this case, and the affiant reaffirms this unanimous verdict, namely, that the Jury awarded plaintiff the total judgment of $24,750.00, which award equals 55% of this total damages awarded; that it is not intended that this 55% figure represent plaintiff's negligence; that on the contrary, the percentage of negligence of plaintiff was 45% and not 55% as shown on the verdict form, which form was confusing to begin with.[3] [Footnote added.]

Thereafter, the Cabrals' motion was denied and judgment was issued in favor of McBryde.

I.

The Cabrals did not raise the strict liability issue before this appeal. A judgment will not be reversed upon a legal theory not raised in the court below unless justice requires otherwise. *Earl M. Jorgensen Co. v. Mark Constr. Inc.,* 56 Haw. 466, 540 P.2d 978 (1975). In deciding whether justice requires otherwise, we are required to determine whether consideration of the issue requires additional facts, whether the resolution of the question will affect the integrity of the findings of fact, and whether the question is of great public import. *Fujioka v. Kam,* 55 Haw. 7, 514 P.2d 568 (1973). In this case

---

[3] The trial judge instructed the jury that "the proximate cause of damage is the caused [sic] which in direct, unbroken sequence, produces the damage, and without which the damage would not have occurred." During its deliberations, the jury asked the court to again "explain proximate cause" and the trial judge reread the definition to them. We suggest that the use of the word "proximate" in this context is misleading and confusing (but not so much so as to cause us to invoke our special power under *Turner v. Willis,* 59 Haw. 319, 582 P.2d 710 (1978)). As *McKenna v. Volkswagenwerk,* 57 Haw. 460, 558 P.2d 1018 (1977), and Professor Prosser in his *Handbook of the Law of Torts,* section 41 (Fourth Edition 1971), suggest, the question of legal causation involves two discrete issues: (1) Causation in fact: In single cause cases, would the harm have occurred but for the actor's conduct? In multiple cause cases, was the actor's conduct a substantial factor in bringing about the harm? (2) Scope of liability: Was the harm a reasonably foreseeable result of the actor's conduct?

we answer the questions no, no, and yes, respectively, and hold that justice requires us to consider the strict liability issue.

The Cabrals premise their strict liability argument on the doctrine of *Rylands v. Fletcher.* 78 AM. JUR.2d, *Waters,* § 211 (1975). However, "the overwhelming preponderance of authority supports the rule that liability for damage caused by the escape of waters impounded in reservoirs or ponds, or confined in their flow to artificial ditches, depends upon proof of some act of negligence." *Id.* Hawaii has adopted the general rule. *Hau v. Palolo Land & Improvement Co.,* 20 Haw. 172 (1910). Therefore, McBryde is not strictly liable for damages suffered by the Cabrals' property.

## II.

The Cabrals' motion was an alternative motion under Rule 50, HRCP, for judgment notwithstanding the special verdict and under Rule 59, HRCP, for alteration or amendment of the judgment or for a new trial.

Clearly, the Cabrals are not entitled to relief under Rule 50, HRCP. Rule 50 requires that the motion for a directed verdict and the motion for judgment notwithstanding the verdict be made on the same grounds. 9 WRIGHT AND MILLER, FEDERAL PRACTICE AND PROCEDURE: *Civil* § 2537 (1971). Here, the grounds were different. Consequently, we are faced with a motion exclusively based on Rule 59, HRCP.

A motion under Rule 59, HRCP, is addressed to the trial court's sound discretion and its decision will be reversed on appeal only upon a showing of a manifest abuse of discretion. *Struzik v. City and County of Honolulu,* 50 Haw. 241, 437 P.2d 880 (1968). In the instant case the denial of the motion was not a manifest abuse of discretion.

To achieve the result which the affidavits claim the jurors intended, the answers to questions 5 and 6 would have had to have been as follows:

5. Of the parties whose negligence you found to be a proximate cause of the occurrence, what percentage of responsibility for the occurrence do you assign to each party?

| | |
|---|---|
| DEFENDANT: | 55% |
| PLAINTIFF: | 45% |
| TOTAL: | 100% |

6. State the amount of damages sustained by the Plaintiff in the April 19, 1976, occurrence:

$45,000.00

We note, however, that the affidavits do not say that these were the answers to the questions, nor do they say that mistakes were made in the recording of the jury's answers to the questions on the special verdict form.[4] On the contrary, the affidavits say, in effect, that the jurors wanted the Cabrals to win $24,750 and tried to answer the special verdict form questions so as to cause that result but they mistakenly answered them in such a way as to cause an opposite result and now they want to change their answers.

Therefore, the issue is whether when a jury, subsequent to its discharge, realizes that its answers to the questions on the special verdict form have caused a result opposite from what it intended, it will be allowed to change one or more of its answers so as to cause the result it intended. Our answer is no.

It must be remembered that the jury was answering a special verdict form. "A special verdict, as distinguished from a general verdict, is one in which the jury find all the facts of the case and refer the decision of the cause upon those facts to the court." (Footnotes omitted) 75 AM. JUR.2d, *Trial*, § 1175 (1975). Thus, the jury was not asked to decide the ultimate verdict. It was asked to answer six questions, which it did. The fact that the jury, because of the confusion or misunderstanding of the jurors, answered the six questions in a way that caused the judge to enter an ultimate verdict opposite from the one the jurors expected him to enter is not grounds for reversal.

Hawaii has adopted the rule stated in 76 AM. JUR.2d, *Trial*, § 1219 (1975), that "affidavits of jurors impeaching a verdict will not be received where the facts sought to be shown are such as inhere in the verdict." (Footnote omitted) *Lyon v. Bush*, 49 Haw. 116, 412 P.2d 662 (1966); *Carpenter v. Honolulu Rapid Transit Co.*, 35 Haw. 761 (1940); *Howland v. Jacobs*, 2 Haw. 155 (1859). Here, the facts shown

---

[4] *See* Annot. "Competency of Juror's Statement or Affidavit to Show that Verdict in Civil Case was not Correctly Recorded." 18 A.L.R.3d 1132 (1968), and Rule 606(b), Hawaii Rules of Evidence, Chapter 626, Hawaii Revised Statutes, effective January 1, 1981.

are such as inhere in the verdict. Consequently, the affidavits should not have been received by the court below and there is no grounds for reversal.

Affirmed.

*Bernaldo D. Bicoy (Ernest Y. Yamane* with him on the briefs) for plaintiffs-appellants.

*Carleton B. Reid (Ashley K. Fenton* with him on the briefs) for defendant-appellee.